MARY ROBESON SMITH et al.

*v.*

WILLIAM H. MORROW et al.

[Submitted March 2d, 1915. Decided March 10th, 1915.]

A bill by the heirs of a grantor, who had conveyed property to trustees, and provided that, if it should at any time cease to be used for the purpose therein specified, it should revert to him and his heirs, in which they alleged that the property had ceased to be used for the specified purposes, and sought to recover possession thereof, states merely an action to recover property for a breach of condition subsequent in a deed, triable at law, and equity has no jurisdiction thereof, though it could take jurisdiction of a suit by the trustees to have the terms of the trust construed for their guidance.

*Messrs. Vroom, Dickinson & Bodine,* for the complainants.

*Mr. Sylvester C. Smith,* for the defendants.

BACKES, V. C.

The bill involves the title to the Belvidere Classical Academy, in the town of Belvidere. In 1843, Anna M. Wall caused the land to be conveyed to three trustees in fee:

"Upon this special confidence and trust nevertheless, that they, the said party of the second part, and the survivors and survivor of them, their and his heirs and assigns, and shall hold the said lot for the purpose of building an academy or school house, for the education of youth and *to used* to promote the cause of education, the improvement of the mind, and morals of the rising generation, the diffusion of scientific knowledge and *rational amusement or such other purposes as* will have a tendency· to render the rising generation intelligent, moral, useful and good citizens if the citizens of Belvidere *shall* shall see proper to erect a building for that purpose on the said lot, not less than forty-five feet front, and thirty-two feet deep, not less than three stories high, including a basement story under the whole, not less than four feet below the earth and six feet above the earth, in a good substantial, and workmanlike manner, and complete the same in eighteen months from the date hereof. And

it is hereby declared that the said party of the second part, and the survivors or survivor of them, and the heirs of such survivors or survivor, and their or his assigns, may continue the said trust from time to time as occasion may require, by conveying a new Trustee or Trustees so as to perpetuate the said Trust, and if it shall so happen that the contributors to the erection of the said building shall become incorporated, then that it shall and may be lawful for the said party of the second part, the survivors or survivor of them, their and his heirs or assigns to convey the said premises to such corporation and their successors and assigns, upon the trusts herein designated. And it is hereby further declared that if the said building shall be converted to any other purpose, than that herein designated, for the term of five consecutive years, or the said trust shall be violated in any other manner, so that the end and object of the trust herein declared, shall be defeated or perverted, then and in that case the said lot, with the appurtenances, shall revert to and be revested in the said party of the first part, his heirs and assigns."

The citizens of Belvidere erected a building as thus stipulated, whereupon, in 1868, the grantees conveyed the premises to the Belvidere Classical Academy, a corporation. The corporation maintained an academy until a few years prior to 1886, when the officials of the organization abandoned the undertaking. In 1886, three or four gentlemen, one of whom was the defendant William H. Morrow, residents of Belvidere, took possession of the building, installed teachers, and conducted a school for six years. Thereafter, in the years 1897 and 1898, 1904 and 1905 and 1913, the public school authorities used the building for class rooms. Mr. Morrow seems to have been in possession and control of the building during all of these years, but always willingly surrendering its use for educational purposes whenever request was made. During the periods when the building was not used for school purposes, he, occasionally, and for short spaces, used it in part for the storage of crops, the housing of his colored man, and, latterly, permitted the upper floor to be used for the giving of dancing lessons. On the lawn he erected a tennis court for use of the young folks of the town, and also sometimes kept his fancy chickens in the yard. In Mr. Morrow's supervision and control of the building he has been a voluntary substituted trustee, with the single aim of preserving the trust for the public, and in fact expressed himself at the hearing that he was anxious to surrender the building to the

public authorities for school purposes if they would accept. His motives were philanthropic, in the interest and welfare of his home town. When, in 1886, he and his associates undertook their work, there was a builder's mortgage of $600 on the premises which they purchased, under which he now, as against all but the public authorities, asserts his right of possession. The complainants claim to be the owners of a reversionary estate, and in the bill allege and by the proofs attempt to show that the uses and trusts upon which the property was conveyed have been violated, that the trust has failed and been defeated, and that the lands and premises have reverted to and revested in the heirs and assigns of the original grantor (the complainants), and they pray that it be so adjudged and that it be decreed that the defendants, Morrow, the Belvidere Classical Academy and the State of New Jersey, the three defendants, have no right, title and interest in the premises; that all right, title and interest is vested in the complainants, free from the trusts aforementioned, concluding with a prayer for other and further relief.

The trustees of the Belvidere academy have not appeared, except as they may be represented by Mr. Morrow, who, in his answer, disputes the alleged title of some of the complainants, denies the material facts of the bill upon which the claim to a reverter is founded (which he supports by proof), and also sets up that this court is without jurisdiction in the premises. The defendants' counsel offered to argue the jurisdictional question before the taking of testimony began, but, as the point was not brought to my attention until the hearing day, I thought it would expedite the cause to take the proofs and reserve the question for final argument.

The complainants' counsel argues that the deed creates a charitable trust, and that inasmuch as trusts of this character are under the general supervisory powers of the court of chancery, jurisdiction ought to be exercised to construe the terms of the trust, in analogy to the common practice of construing trusts advisory of the duties of trustees, or in the enforcement of trusts, or where the construction is incidental to other equitable relief.

Chancellor Magie, in *Hoagland* v. *Cooper, 65 N. J. Eq. 467*, in speaking of the exercise of jurisdiction to construe wills, and which is apposite in the construction of other documents involving trusts, says: "Most of them are cases in which the trustee, or one charged with duties of a fiduciary character, has sought the aid of the court to direct him with respect to his official duty as trustee and in which the determination as to what direction should be given is involved with the construction of the will. * * * There are other cases in which this court, under its general equitable jurisdiction, construes wills and other writings in determining whether the particular relief sought by the bill is proper to be given, as upon bills for injunction, interpleader, &c. * * * In no case has it been asserted that the court may be asked and compelled to construe a will except as incident to some relief which may be afforded by a decree. It has been expressly held that the court will not construe wills for the sake of giving counsel and advice to the parties, but only for the purpose of giving positive directions for the action of the trustee." Other authorities need not be cited to demonstrate that the complainants cannot invoke this function of the court. What the complainants really seek is a construction of the deed of trust, a finding of fact that the terms of the trust have been violated and a conclusion that the title has reverted, as a basis for a decree declaring the title of the land out of the defendants and to be in the complainants, by virtue of a right of re-entry because of a breach of a condition subsequently annexed to the grant; in effect, a decree of ejectment. The issue is one over which equity has not cognizance. The dispute is concerning a purely legal right in land, and must be solved in the law courts, which tribunals afford an adequate remedy. *Sheppard* v. *Nixon, 43 N. J. Eq. 627; Torrey* v. *Torrey, 55 N. J. Eq. 410; Thropp* v. *Public Service Electric Co., 93 Atl. Rep. 693.*

The cause will be transferred to the law courts under *"The Transfer of Causes act" (1912), P. L. p. 117.*